1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEVIN DEVON NEWSOME,                    No.  1:17-cv-00983-DAD-JLT (HC)

12                  Petitioner,              **FINDINGS AND RECOMMENDATION
                                             TO DENY PETITION FOR WRIT OF**
13          v.                               **HABEAS CORPUS**

14   D. PARAMO, Warden,                      **[TWENTY-ONE DAY OBJECTION
                                             DEADLINE]**
15                  Respondent.

16

17          Petitioner is currently serving a 54-year sentence in state prison for multiple convictions

18   related to a jewelry store robbery in Bakersfield, California.  He filed the instant habeas action

19   challenging the conviction and sentence.  As discussed below, the Court finds the claims to be

20   without merit and recommends the petition be **DENIED.**

21   **I.      PROCEDURAL HISTORY**

22          On May 22, 2013, Petitioner was found guilty in the Kern County Superior Court of:

23   attempted murder (Cal. Penal Code §§ 664/187(a)); second degree robbery (Cal. Penal Code §§

24   211/212/5(c)); assault with a firearm (Cal. Penal Code § 245(a)(2)); and unlawful possession of a

25   firearm by a felon (Cal. Penal Code § 29800(a)(1)).  People v. Newsome, 2016 WL 409787, at *1

26   (Cal.Ct App. 2016).  The jury found true enhancements that Petitioner personally and

27   intentionally discharged a firearm (Cal. Penal Code § 12022.53(c)), and personally used a firearm

28   (Cal. Penal Code § 12022.5(a)).  Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA affirmed the judgment on February 3, 2016. Id.

Petitioner then filed a petition for review in the California Supreme Court. (LD 20.[1]) The petition was summarily denied on April 20, 2016. (LD 21.)

On June 22, 2013, Petitioner next filed a petition for writ of habeas corpus in the Kern County Superior Court. (LD 22.) The petition was denied on August 16, 2013. (LD 23.) He filed another habeas petition in the Kern County Superior Court on September 25, 2013, and that petition was denied on December 16, 2013. (LD 24, 25.)

On July 24, 2017, Petitioner filed the instant petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on December 19, 2017. (Doc. 13.) Petitioner did not file a traverse.

## II.    FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

### A. Prosecution facts relating to counts 1 through 10.

On September 13, 2012, three masked men entered the Southwest Coins & Jewelry store in Bakersfield, California. The owners, Douglas and Katharina Jarvi, were present, along with four customers. Suspect 1, later identified through fingerprint analysis as appellant, held a raised handgun. Appellant yelled for everyone to get down. Katharina testified that appellant's gun was pointed towards the back of the store and not at anything in particular. She described appellant as "tall and slim." She laid down behind a display case and she did not see anything further. She activated the store's alarm system from a panic button she carried.

Douglas testified he was aware that appellant held a gun, but believed appellant panned or waved it around without pointing it directly at anyone. As the intruders walked into the middle of the store, Douglas ran towards the back, pulling out a .22–caliber pistol from his pocket. An intruder (suspect 2) chased after Douglas, jumping over a back glass counter to reach him. [FN2.] Appellant followed closely behind and touched that glass counter with his bare left hand. Douglas fired a single shot at suspect 2 at close range, but the shot missed. Suspect 2 grabbed the gun from Douglas's hand, threw Douglas to the ground, and jumped back across the counter. Douglas went into a back storage area where he kept another gun, a .38–caliber revolver. He retrieved it and peeked back into the showroom. An intruder (suspect 3) was hammering at a glass case near the front door while appellant and suspect 2 stood nearby. Three customers lay on the ground while a

---

[1] "LD" refers to the documents lodged by Respondent with the answer.

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

fourth customer stood frozen near a display case away from the intruders. Near the front door, appellant raised his gun and fired twice at Douglas, who returned two shots. No one was struck. Suspect 3 broke open the case and grabbed a tray of diamond rings worth approximately $30,000. The intruders fled.

> [FN2.] Appellant was tried concurrently with his codefendant, Randon McQuiller, who was also charged in counts 1 through 10. It was the prosecution's theory that McQuiller was suspect 2. The jury could not reach a unanimous agreement regarding the charges against McQuiller and a mistrial was declared as to him. The third suspect was not involved in this trial.

Douglas called 911. Neither Douglas nor Katharina saw any of the intruders' faces and neither could identify anyone from photographic lineups. The robbery lasted less than a minute and was recorded by the store's surveillance system, which was played for the jury. Upon viewing the video, law enforcement tested for fingerprints the area where suspect 1 had touched the glass. A useable print was located in that area, which was an exact match to appellant's left ring finger and partial left palm print. The prints were consistent with the video where suspect 1 placed his left hand on the glass countertop.

After appellant's fingerprints were discovered, law enforcement asked Douglas and Katharina if they knew why appellant's prints would be there, but they did not know. Neither Douglas nor Katharina recalled ever seeing appellant in their store before the robbery. At trial, Douglas estimated that around 50 customers entered the store on a daily basis, and he recalled that Katharina cleaned the glass cases the night before the crime. Katharina testified that she was "99 percent" certain and "pretty sure" she had wiped down the glass counters the night before the robbery. The prosecution's fingerprint expert noted that latent fingerprints could remain on a glass surface for many years without any cleaning.

Jonathan Villegas was in the store with his girlfriend, Michelle Mendez, and his young child, Victor Villegas. Jonathan heard a commotion from the store's door and turned to look. He saw someone pointing a gun at him, and he heard, "Get on the ground." Jonathan laid down, covering his son while Mendez laid down next to them. Jonathan was unable to identify any of the intruders.

Peggy Dodge was in the store when the robbery occurred. She remained standing during the crime, including as shots were fired. She later told a law enforcement officer that she froze during the events. The officer described Dodge's demeanor afterwards as "physically upset or shaken."

A few hours after the robbery, Bakersfield police received a 911 call from Ebone King, the girlfriend of codefendant Randon McQuiller, who also participated in the call. McQuiller reported that he had been shot during a dice game and he was driving to a particular hospital. King said he was driving a silver Buick Regal.

Police arrived at the hospital shortly thereafter but were unable to locate McQuiller. Police located and seized his silver Buick Regal, which contained his wallet. Based on surveillance video, police knew that a silver four-door vehicle was used in the robbery, but they could not determine a license plate number, or determine the year, make or model of the vehicle involved.

The morning after the robbery, police located items from the robbery in a dumpster near a Starbucks. Three black ski masks, five gloves, a white shirt with

blue sleeves, dark blue pants, a black T-shirt, and the price tags from the stolen jewelry were recovered. The blue-and-white shirt still had a price tag on it, which allowed police to identify where it was purchased, which was from a clothing store directly across the street from the jewelry store. Police learned that McQuiller purchased that shirt, as well as three black ski masks, on the day of the robbery. Video recorded McQuiller in the clothing store as he made the purchases, which was played for the jury. A detective opined that the blue-and-white shirt which McQuiller purchased was the same shirt worn by suspect 2 in the video from the robbery.

**B. Facts relating to counts 11 and 12.**

Appellant was arrested the day after the robbery at a convenience store in Bakersfield. He had arrived at that location as a passenger in a vehicle, riding in the back seat. [FN3.] Appellant was with Christopher Davis, who was arrested along with appellant. After the arrests, police searched the vehicle and located two firearms hidden under the trunk liner, which were not linked to the robbery. One of the weapons, a revolver, had been stolen approximately three days before from the residence of Cecil and Rose Tackett. Surveillance video showed that appellant had accessed the trunk in the parking lot prior to his arrest.

> [FN3.] At the preliminary hearing, a law enforcement officer had opined that appellant drove this vehicle based on a review of surveillance video.

The Tacketts testified at trial regarding the burglary of their home. On the morning of their burglary, Rose was working at her place of business, which is located close to her home, and she saw three men walking down an alley towards her residence. The three individuals were of three different sizes, with one being "really tall" and "pencil skinny." About thirty minutes later, she saw the three men returning in the alley carrying items, including a box that she recognized from her home. She went home a short time later and confirmed that her home had been burglarized. Law enforcement subsequently showed photographic lineups of potential suspects to both of them, but neither Cecil nor Rose were able to identify anyone. In court, neither Cecil nor Rose were able to identify either appellant or McQuiller as individuals who may have been involved in the burglary of their home.

Approximately two weeks after the jewelry store robbery, police searched Davis's house. The search was prompted by a recorded jail call between appellant and an unknown female, who referred to "something" being found at "somebody's" house. Appellant responded that it did not matter because his stuff was at "Chris mama house." The search of Davis's home yielded nothing of significance.

**C. Defense evidence.**

Appellant rested following the prosecution's case. McQuiller provided a defense and testified on his own behalf. He explained that he purchased the ski masks and shirt at the request of a friend, known to him as Mississippi, on the day of the robbery while Mississippi waited outside the clothing store. McQuiller said Mississippi wanted "beanies" but Mississippi said he was okay with the ski masks as a substitute. McQuiller and Mississippi parted ways, and Mississippi took the shirt and ski masks. McQuiller went to several smoke shops and the mall, and then eventually to the hospital. He said he was high that day, and he could not recall why he drove to the hospital. McQuiller denied knowing appellant, but admitted knowing Davis and spending time with Davis's brother. The prosecutor confronted

McQuiller with telephone records indicating that McQuiller was in phone contact with Davis's brother just after McQuiller purchased the ski masks. McQuiller said he could not recall whether he contacted Davis's brother that day or not.

Newsome, 2016 WL 409787, at *1–3.

**III.    DISCUSSION**

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a

5

different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) (citing <u>Williams</u>, 529 U.S. at 405-406).

In <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" <u>Cullen v. Pinholster</u>, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." <u>Harrington</u>, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. <u>Davis v. Woodford</u>, 384 F.3d 628, 637 (9th Cir. 2003) (citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." <u>Jeffries</u>, 114 F.3d at 1500; <u>see</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert. denied*, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 979, 803 (1991); <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 119-120 (2007)

(holding that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C.     <u>Review of Claims</u>

The petition presents the following nine grounds for relief: 1) The evidence produced at trial was insufficient to establish his identity as perpetrator of the crimes; 2) The prosecution knowingly presented false evidence; 3) Defense counsel was ineffective and wholly incompetent; 4) Defense counsel violated Petitioner's constitutional rights by failing to dismiss a juror that had information not introduced a trial; 5) The evidence was insufficient to support the assault with a firearm conviction; 6) The trial court's denial of a motion to sever was erroneous and prejudicial; 7) The trial court committed prejudicial error by instructing the jury on flight; 8) The trial court committed prejudicial error by failing to instruct the jury on brandishing a weapon as a lesser included offense of assault with a deadly weapon; and 9) The trial court violated Petitioner's rights under the Fourteenth Amendment during sentencing.

1.     <u>Insufficient Evidence</u>

Petitioner claims his conviction is based solely upon his fingerprints being found inside the jewelry store. He alleges this evidence was insufficient to sustain his conviction. He claims that the fingerprint evidence merely established that he had left a print there, but it was not established when those prints were left. He states he had been to that store on two prior occasions. He points to the fact that other prints were discovered in the same vicinity, and that his prints were not found anywhere else in the store despite having placed his hand on various objects. He also claims that he has tattoos on his forearms and wrists, but the surveillance video showed the entire left arm of the perpetrator without tattoos.

Petitioner raised this claim on state habeas to the Kern County Superior Court. He did not however raise it to the California Supreme Court. Respondent correctly argues that the claim is unexhausted and must be dismissed. Nevertheless, the claim may be denied on the merits if Petitioner has failed to present a colorable federal claim. 28 U.S.C. § 2254(b)(2); <u>Cassett v. Stewart</u>, 406 F.3d 614, 623-24 (9th Cir. 2005). In this case, Respondent is correct that Petitioner's insufficiency of the evidence claim is not colorable and should be denied.

a. <u>Legal Standard</u>

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. <u>Jackson</u>, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. <u>Id</u>. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id</u>. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of <u>Jackson</u> with an additional layer of deference. <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 459 (1986).

In <u>Cavazos v. Smith</u>, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that <u>Jackson</u>

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they

8

believe to be mistaken, but that they must nonetheless uphold. Id. at 2-3.

b. Analysis

Respondent argues Petitioner fails to present a colorable claim. The Court agrees. After viewing the evidence in the light most favorable to the prosecution, it is clear that a rational trier of fact could have Petitioner was in fact one of the perpetrators.

Surveillance video of the crime showed a suspect place his bare left hand on a glass counter at the back of the store. (RT 658-61.) The crime scene technician retrieved a latent fingerprint and partial palm print from the same location shown in the video. The fingerprint and palm print matched Petitioner's left ring finger and left palm. (RT 661-65, 673, 686, 693, 767-71, 776-77.) The surveillance video also showed that no other person touched the glass counter in that area that entire day. (RT 695.) When the owners were questioned, they stated they had not seen Petitioner in their store before. (RT 478, 480, 528-29, 933, 958-59.) Douglas Jarvi, one of the owners, recalled that his wife, Katharina Jarvi, had cleaned the glass cases the night before the crime. (RT 467, 490.) Katharina Jarvi testified she was 99 percent sure she had wiped down the glass counters the night before the crime. (RT 525, 532.) Based on this evidence and the inferences that could be drawn therefrom, a rational factfinder could have determined that Petitioner was one of the suspects.

To the extent that Petitioner argues that other evidence supported his claim that he was not one of the perpetrators, the Court must assume that the jury resolved these conflicting facts in favor of the prosecution. Jackson, 443 U.S. at 326. The reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

2. Use of False Testimony

Petitioner next claims the prosecutor committed misconduct by knowingly presenting false evidence. He asserts that the prosecutor elicited false testimony from lead Detective Toler as well as another Bakersfield Police Officer that Petitioner was the driver of the vehicle that was

seized on September 14, 2012.  Petitioner complains that this false information led to two

additional charges because a search of the vehicle revealed two firearms.  After Petitioner was set

for trial, the prosecution advised the court that they had been under the false assumption that the

petitioner was the driver when video showed he was in fact a rear passenger.  The prosecution

then used the two firearms to connect Petitioner to an unrelated burglary in which one of the

firearms was stolen, and thus paint Petitioner in a negative light.  Petitioner also complains that

the prosecutor elicited testimony from the detective that his fingerprints were recovered from

behind the victims' counter tops when in fact they were recovered from on top of the counter top,

which is more accessible to the public.

Like the first claim, Petitioner only presented this claim to the Kern County Superior

Court.  It is therefore unexhausted.  Nevertheless, because the Court agrees that Petitioner fails to

present a colorable claim, the Court will recommend it be denied on the merits.

a.  <u>Legal Standard</u>

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally

unfair, and must be set aside if there is any reasonable likelihood that the false testimony could

have affected the judgment of the jury."  <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976); <u>Napue</u>

<u>v. Illinois</u>, 360 U.S. 264 (1959).  So must a conviction obtained by the presentation of false

evidence.  <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667, 678-80 nn.8-9 (1985).  In <u>Napue</u>, the

Supreme Court held that the knowing use of false testimony to obtain a conviction violates due

process regardless of whether the prosecutor solicited the false testimony or merely allowed it to

go uncorrected when it appeared.  <u>Id</u>. at 269.  The Court explained that the principle that a State

may not knowingly use false testimony to obtain a conviction - even false testimony that goes

only to the credibility of the witness - is "implicit in any concept of ordered liberty."  <u>Id</u>.  In order

to prevail on such a due process claim, "the petitioner must show that (1) the testimony (or

evidence) was actually false, (2) the prosecution knew or should have known that the testimony

was actually false, and (3) the false testimony was material."  <u>United States v. Zuno–Arce</u>, 339

F.3d 886, 889 (9th Cir. 2003), <i>cert. denied</i>, 540 U.S. 1208 (2004).  Nevertheless, simple

inconsistencies in testimony are insufficient to establish that a prosecutor knowingly permitted

the admission of false testimony.  <u>United States v. Zuno-Arce</u>, 44 F.3d 1420, 1423 (9th Cir.1995).

"Discrepancies in . . . testimony . . . could as easily flow from errors in recollection as from lies."

<u>Id</u>.

    b.  <u>Analysis</u>

    Respondent is correct that Petitioner fails to present a colorable claim under <u>Napue</u>.  His

claims are unsupported by evidence, and he fails to point to anywhere in the record where officers

allegedly provided false testimony.  Moreover, he fails to show that any testimony was actually

false, that the prosecution knew or should have known that any testimony was false, that the

prosecution knowingly permitted false testimony, and that the false testimony was material.  The

claim is conclusory and should be rejected.

    3.  <u>Ineffective Assistance of Counsel</u>

    In grounds three and four, Petitioner alleges that defense counsel was ineffective and

incompetent in the following ways: 1) By permitting the prosecution to present false evidence

when the prosecutor stated that Petitioner was the driver of the vehicle seized on September 14,

2012; 2) By failing to present his alibi witness who would have stated he was with her during the

time of the crime; 3) By failing to dismiss a juror that had preexisting knowledge about the case;

4) By submitting letters to the court that were provided by Petitioner's family and friends asking

the court to show mercy at sentencing; 5) By failing to present evidence of the tattoos on

Petitioner's hands and forearm; 6) By neglecting to hire an investigator to look into his alibi

defense; 7) By representing Petitioner despite having a conflict of interest after having

represented Petitioner's brother; 8) By failing to consult or retain an expert witness concerning

the fingerprint evidence.

    Like the previous claims, Petitioner only presented this claim to the superior court.  It is

therefore unexhausted and subject to dismissal.  Nevertheless, the Court will address the claims

since they are not colorable and therefore may be denied.

    a.  <u>Legal Standard</u>

    Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth

Amendment.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of

counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

b. <u>Analysis – Prosecutor's Presentation of False Evidence</u>

Petitioner complains that defense counsel should have objected when the prosecutor made statements to the effect that Petitioner was the driver of the Buick vehicle that was seized on September 14, 2012, despite video evidence showing Petitioner exiting from the rear passenger seat.

As previously discussed, Petitioner has failed to show that the prosecutor knew or should have known that the evidence was false when it was presented. Petitioner has not shown by citation to the record, affidavits or declaration that the officers lied when they testified, and that the prosecutor knowingly allowed the evidence to be presented. Consequently, Petitioner cannot show that defense counsel's failure to object was erroneous and prejudicial. Moreover, counsel's decision whether to object is a tactical decision accorded great deference and is presumed to be sound trial strategy. <u>Morris v. California</u>, 966 F.2d 448, 456 (9th Cir. 1991). Petitioner makes no showing that counsel could not have had a valid tactical reason for not objecting to the officers' testimony. The claim is without merit.

c. <u>Analysis – Failure to Present Alibi Witness</u>

Petitioner alleges that defense counsel failed to call an alibi witness, Dranelle Mock, who would have testified that Petitioner was with her during the crime. However, Petitioner makes no showing that defense counsel did not investigate and interview Mock prior to trial. In fact, according to the declaration Petitioner submitted from Mock, defense counsel was well aware of Mock and what her testimony would have been. (Pet. at 54-55.) Thus, he cannot overcome the presumption that defense counsel investigated the witness but made the tactical decision not to call her at trial.

In addition, Mock's declaration reveals she had a romantic relationship with Petitioner. Counsel could have determined that her testimony would not have assisted the defense since her bias was apparent, and the evidence of Petitioner's presence at the crime was strong. As previously discussed, video surveillance footage showed a perpetrator placing his left hand on the counter top. Fingerprints were lifted from that location matching Petitioner's left palm and ring finger. The owners had testified that the countertop had been cleaned the night before, and video

surveillance showed no one else had touched that area that day. In light of the strength of the identity evidence and Mock's strong bias, counsel could have made a rational tactical decision not to call Mock at trial. Petitioner fails to show that counsel erred or that the error resulted in any prejudice. The claim should be rejected.

d. <u>Analysis – Failure to Dismiss Juror</u>

During voir dire, a prospective juror advised the court that she had knowledge of the case. Petitioner alleges that counsel was ineffective in failing to dismiss the juror for bias.

The transcript of voir dire reflects the juror informed the trial court as follows:

> [Juror No. 9]: My wife is a news anchor for a local station here in town. After you mentioned it, we knew about the incident. I think I have discussed it with her in private, and she knows maybe some of the other individuals involved. I wasn't 100 percent sure if this was the right incident or not; so I would have to really find out. I can't say for sure if it is or not. I might have discussed it with her. And we have three children. One is 17, one is 8, and one is 1. And we live in Kern County in the northwest. I can be fair and impartial.

> THE COURT: Thank you.

> Juror No. 9, let me ask you, certainly you can't talk to anybody about this case; right? The admonition. But let me ask you, let's assume that it comes to you later on today that you do recall some news coverage or media coverage or maybe not today but perhaps when the evidence begins its presentation.

> Would you be able to set aside what you have learned previously through the media, because that is not the evidence –

> PROSPECTIVE JUROR: Uh-huh.

> THE COURT: -- and base your decision on this case only that is presented in this courtroom?

> PROSPECTIVE JUROR: Yes, I can. But I would like to say, it is not just from here to the media. I know my wife has talked to the owner and the owners of the next-door businesses, and she has told me what they have said. That stuff, I already have heard. I still can be impartial, but I have heard things.

(LD 15 at 402-03.)

As shown above, there is no indication that the juror was biased against Petitioner. The juror stated he could be fair and impartial. Defense counsel could reasonably have accepted this representation. Petitioner asserts that "[t]here is a reasonable probability that this juror spoke to his wife dispite [sic] the admonishment and returned to the deliberation room with the extraneous information and thereby tainted Petitioner's jury." (Doc. 1 at 20.) There is no evidence to

14

support this allegation.  It is pure speculation.  Therefore, it should be dismissed for failure to state a colorable claim for relief.

### e.  Analysis – Submission of Letters from Friends and Family

Petitioner next alleges that trial counsel committed prejudicial error during the penalty phase when he submitted letters to the court from friends and family of the petitioner.  Those letters stated that the petitioner informed the writer that he was guilty and wanted the judge to show him mercy.  Petitioner fails to submit any evidence of these letters, and they are not part of the record before the Court.  Thus, the claim is conclusory.  Moreover, Petitioner states that these letters were submitted during the penalty phase.  He had already been found guilty of the crime.  Therefore, Petitioner cannot show prejudice by the fact that the writers admitted Petitioner was guilty after guilt had already been established.

### f.  Analysis – Failure to Present Evidence of Tattoos

Petitioner contends counsel was ineffective in failing to introduce evidence of Petitioner's tattoos on his hands and forearms.  He claims the suspect's entire left arm was exposed revealing no tattoos on the forearm or wrists. He claims he has tattoos both on his wrists and forearms.  The claim is entirely speculative in that Petitioner does not support his claim with any evidence.  He makes no showing that he had certain tattoos that should have been visible in the video.

Moreover, the Court has reviewed the surveillance footage of the robbery from the various camera angles.[3]  (LD 5.)  The suspect wore a long-sleeved shirt and his arm was not visible; thus, whether the suspect had any tattoos on his forearm is impossible to determine.  (LD 5.)  As to any wrist tattoos, only the upper portion of the suspect's wrist is visible, but due to the poor resolution of the footage, it cannot be determined whether the suspect had tattoo markings on his wrist.  (LD 5.)  Petitioner fails to show that counsel was ineffective in failing to present this evidence.  In addition, since the evidence would not have assisted the defense, he cannot show prejudice.

### g.  Analysis – Failure to Hire Investigator

Petitioner claims defense counsel should have hired an investigator to "look into" his

---

[3] The surveillance footage has been lodged with the Court as part of the record.

alibi. Petitioner makes no showing that an investigator would have helped his defense. He does not state what an investigator would have discovered had one been retained, or how the undiscovered evidence would have altered the outcome of the trial. The claim is purely speculative and should be dismissed.

h. <u>Analysis – Conflict of Interest</u>

Petitioner argues that defense counsel operated under a conflict of interest because he had previously represented Petitioner's brother. Again, the claim is completely conclusory. There is no indication that defense counsel had a conflict of interest. Counsel's prior representation of Petitioner's brother alone would not create a conflict of interest. As pointed out by Respondent, Petitioner must point to "an actual conflict of interest 'that affected counsel's performance- as opposed to a mere theoretical division of loyalties.'" <u>People v. Doolin</u>, 45 Cal.4th 390, 417-18 (2009). Petitioner points to no actual conflict, and he fails to show that counsel's performance was affected in any way. The claim should be rejected.

i. <u>Analysis – Failure to Retain Fingerprint Expert</u>

Finally, Petitioner alleges defense counsel failed to consult and retain a fingerprint expert. Like his previous claims, this claim is completely conclusory. He does not support his claim with any evidence. He merely speculates that a defense expert on fingerprints would have been beneficial. He fails to establish that the outcome would have been any different had an expert been consulted and retained.

4. <u>Insufficient Evidence of Assault with Firearm</u>

Petitioner claims that the evidence did not support the conviction for assault with a firearm. Petitioner raised this claim on direct review. In the last reasoned decision, the state appellate court rejected the claim as follows:

> Appellant asserts that the prosecution failed to carry its burden of proof regarding the convictions for assault with a firearm relating to Douglas, Katharina, and Dodge. He contends these counts must be reversed for insufficient evidence.

**A. Standard of review.**

**1. Sufficiency of the evidence.**

For an appeal challenging the sufficiency of evidence, we review the entire record

in the light most favorable to the judgment to determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt based on "'evidence that is reasonable, credible, and of solid value....'" (*People v. Jones* (2013) 57 Cal.4th 899, 960.) In doing this review, we are not required to ask whether we believe the trial evidence established guilt beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) Rather, the issue is whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence favorably for the prosecution. (*Ibid.*) We are to presume the existence of any fact the jury could have reasonably deduced from the evidence in support of the judgment. (*Ibid.*)

### 2. Assault.

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) A violation of section 245, subdivision (a)(2), requires "an assault upon the person of another with a firearm...." Assault is a general intent crime. (*People v. Valdez* (2002) 27 Cal.4th 778, 787.)

### B. Analysis.

Appellant asserts on appeal that he merely brandished his weapon in a manner to convey fear, which does not rise to the legal definition of assault with a firearm. He argues only one of the victims, Jonathan, testified that a gun was pointed at him, which appellant concedes is "likely sufficient" to support the convictions for assault involving Jonathan, his girlfriend, and his son (counts 4, 5 and 7, respectively). However, appellant contends there is no evidence he pointed his gun at Douglas, Katharina, or Dodge. He notes he did not shoot Dodge, although she failed to get down, and he only later shot at Douglas when Douglas aimed a weapon at him. He maintains the evidence fails to establish his intent to discharge his weapon or to commit unlawful conduct immediately leading to a battery. He relies principally on *People v. Raviart* (2001) 93 Cal.App.4th 258 (*Raviart*) and *People v. McMakin* (1857) 8 Cal. 547 (*McMakin*), and contends counts 6, 8 and 9 must be reversed.

In *Raviart, supra*, 93 Cal.App.4th 258, the defendant was convicted, among other charges, of two counts of assault with a firearm upon two police officers. (*Id.* at p. 261.) The defendant had aimed his weapon at one officer while both officers closed in and shot him. The defendant claimed insufficient evidence existed to support his conviction for assault involving the second officer because he never pointed his weapon at him, and the second officer was sheltered behind a corner when the shooting occurred. (*Id.* at pp. 262–263.)

The appellate court disagreed, noting it is not necessary to point a firearm directly at a victim to commit the crime of assault. (*Raviart, supra*, 93 Cal.App.4th at p. 263.) Based on its record, *Raviart* determined the jury could have found beyond a reasonable doubt that the defendant drew his loaded handgun with the intent to shoot both officers. (*Id.* at p. 266.) It was enough that the defendant had his gun in a position where he could have used it against the second officer if he had not been shot first. (*Ibid.*) *Raviart* disagreed with the defendant's contention that an assault does not exist unless it is "'the last proximate step'" before a completed battery is present. (*Ibid.*) *Raviart* also dismissed the defendant's argument that the second officer was sheltered because the jury could have found beyond a reasonable doubt that the defendant had the ability to shoot the second officer before he dove for cover. (*Id.* at p. 267.)

In *McMakin, supra*, 8 Cal. 547, which the *Raviart* court cited, the defendant was convicted of assault after he drew a revolver and held it in a perpendicular line with the victim's body, but with the gun pointed downwards so that the shot would have hit the ground had the pistol been fired. The defendant had threatened to shoot the victim if he did not leave the defendant's real property. (*McMakin, supra*, at p. 547.) On appeal, the defendant argued insufficient evidence supported assault. Our Supreme Court rejected that argument because assault can occur when someone holds up a fist in a menacing manner, draws a sword or bayonet, or presents a gun at a person who was within range. (*Id*. at p. 548.) *McMakin* held that the defendant's intent was an issue for the jury to resolve, but competent evidence must exist to show an intent to commit an injury, and the defendant must act in preparation for immediate and not future harm. *McMakin* noted that assault does not occur if a defendant does not intend to use his gun except solely to intimidate. However, assault occurs when the defendant's intent is to go further, if necessary, to accomplish the purpose intended, and the defendant makes preparations, draws his weapon, and is in a position to use the weapon with effect against the victim. (*Id*. at pp. 548–549.) The Supreme Court held that the act of drawing a weapon is generally evidence of an intent to use it. (*Id*. at p. 549.) However, such evidence may be rebutted depending on the defendant's statements or other circumstances showing a lack of intent to use the weapon. *McMakin* affirmed the judgment because the defendant drew and held a weapon in a position to use while also declaring his intent to do so.

In addition to the cases which appellant cites, two additional authorities are instructive. In *People v. Escobar* (1992) 11 Cal.App.4th 502 (*Escobar*), the defendant was convicted of assault with a firearm. The defendant held a gun but concealed it from the victim by holding it inside a briefcase. The victim heard the defendant cock the weapon. (*Id*. at p. 503.) On appeal, the defendant argued there was no attempt to use the weapon to inflict injury. The defendant did not exhibit the weapon, point it, or fire it, "but merely cocked it." (*Id*. at p. 505.) The Court of Appeal determined the victim was aware the defendant was holding a gun and the defendant had a present ability to violently injure. The evidence established "something more than mere preparation." (*Ibid*.) *Escobar* noted the victim did not have to see the gun because he could rely on his sense of hearing to perceive the defendant's intent to commit a violent injury. (*Ibid*.) The evidence was sufficient to establish the defendant intended to willfully commit an act which, had it been completed, its direct and natural consequence was an injury to the victim. (Ibid.)

Finally, in *People v. Chance* (2008) 44 Cal.4th 1164 (*Chance*) sheriff's officers drove to the defendant's residence to arrest him pursuant to felony warrants. The defendant ran from his residence and an officer pursued him on foot, observing that the defendant was carrying a handgun. The defendant ran around the front end of a trailer and the officer approached, but anticipated an ambush. The officer advanced the other direction around the back of the trailer and, after carefully peering around the corner, he saw the defendant facing the front end of the trailer. (*Id*. at p. 1168.) The defendant was holding his gun extended forward. The officer trained his weapon on the defendant, who looked back over his shoulder at him. The officer repeatedly told the defendant to drop his weapon, and the officer testified he was in fear for his life and afraid the defendant was going to shoot him at any second. The defendant was arrested and his gun was recovered fully loaded with 15 rounds in the magazine, although the firing chamber held no round. The gun's safety mechanism was off. (*Id*. at p. 1169.) A jury convicted the defendant of assault with a firearm on a peace officer, along with other offenses. The Court of Appeal reversed the assault conviction, concluding the defendant did not have the present ability to commit a violent injury. (*Ibid*.) The Court of Appeal concluded

18

the defendant's act of pointing his gun at a place where he expected the officer to appear "was not immediately antecedent to a battery." (*Ibid*.) The Attorney General appealed to the Supreme Court, which reversed.

The *Chance* court held assault occurs when a defendant's actions enable him to inflict a present injury. However, "[t]here is no requirement that the injury would necessarily occur as the very next step in the sequence of events, or without any delay." (*Chance, supra*, 44 Cal.4th at p. 1172.) Instead, when a defendant "equips and positions himself to carry out a battery," an assault is present "if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*Ibid*.) "'Once a defendant has attained the means and location to strike immediately he has the "present ability to injure." The fact an intended victim takes effective steps to avoid injury has never been held to negate this "present ability."' [Citations.]" (*Id*. at p. 1174.)

*Chance* determined the defendant's loaded weapon and concealment behind the trailer allowed him to strike immediately at the officer. The officer's evasive maneuver did not deprive the defendant of the required "'present ability'" necessary for conviction of assault. *Chance* rejected the defendant's argument that an assault did not occur because he never pointed his weapon in the officer's direction. That "degree of immediacy" was not necessary. (*Chance, supra*, 44 Cal.4th at p. 1176.) Instead, the defendant's conduct by positioning himself to strike with a loaded weapon was sufficient to establish the actus reus required for assault. (*Ibid*.)

Here, Douglas testified he was not aware of the gun being pointed at anyone, but it was being waved or panned around. The video supports Douglas's testimony. Appellant entered the jewelry store wearing a mask and with a loaded weapon drawn and ready. He held his gun in a manner enabling him to inflict immediate injury to everyone in the store. He panned his gun generally in the direction of everyone in the store as he walked forward. After putting his bare left hand on the glass counter at the back of the store, appellant returned to the front of the store still holding his weapon. From the front of the store, appellant then fired his weapon twice in the general direction of Douglas.

Drawing and holding his loaded weapon was evidence of appellant's intent to use it. He was equipped and in a position to carry out a battery against everyone. There is no requirement that injury had to occur as the very next step in the sequence of events and aiming his weapon at any one person was a degree of immediacy not required for conviction. Although appellant did not shoot at Dodge when she failed to get on the ground, we are not required to ask whether we believe the trial evidence established guilt beyond a reasonable doubt. (*People v. Johnson, supra*, 26 Cal.3d at p. 576.) Rather, the issue is whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence favorably for the prosecution. (*Ibid*.)

Based on this record, sufficient evidence exists to support the jury's determination appellant had the general intent to commit an assault with a deadly weapon upon Douglas, Katharina, and Dodge. This evidence was reasonable, credible, and of solid value such that a reasonable jury could find appellant guilty beyond a reasonable doubt in counts 6, 8, and 9. (*People v. Jones, supra*, 57 Cal.4th at p. 960; *People v. Johnson, supra*, 26 Cal.3d at p. 576.) Accordingly, appellant is not entitled to reversal of these counts.

1    <u>Newsome</u>, 2016 WL 409787, at \*6–9.

2         a.   <u>Legal Standard and Analysis</u>

3         As more fully set forth in Ground One, *supra*, the test on habeas review to determine

4    whether a factual finding is fairly supported by the record is "whether, after viewing the evidence

5    in the light most favorable to the prosecution, any rational trier of fact could have found the

6    essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319.  A jury's

7    verdict of guilt may be set aside "only if no rational trier of fact could have agreed with the jury."

8    <u>Cavazos v. Smith</u>, 565 U.S. 1, 2-3 (2011).  "What is more, a federal court may not overturn a

9    state court decision rejecting a sufficiency of the evidence challenge simply because the federal

10   court disagrees with the state court. The federal court instead may do so only if the state court

11   decision was 'objectively unreasonable.'"  <u>Id</u>.

12        In this case, the state court applied the correct standard of review.  Therefore, the only

13   question for this Court is whether that application was objectively unreasonable.  The Court

14   concludes that it was not.  The state court first identified all of the elements of assault.  It then

15   noted all of the facts supporting each element.  Petitioner challenges the state court's

16   determination that his act of brandishing his weapon was sufficient to support the convictions for

17   assaulting Douglas, Katharina, and Dodge with a firearm.  He claims his act of brandishing did

18   not constitute an intent to commit an injury, but was merely intended to create fear.  The state

19   court reasonably rejected this argument.  The court noted that he entered the store with his

20   weapon drawn and ready to shoot.  The weapon was held in a manner that enabled him to inflict

21   immediate injury on everyone in the store.  Moreover, as Petitioner was leaving he fired his

22   weapon in the direction of Douglas.  From these facts, the state court reasonably determined that

23   a jury could have found the essential elements for assault with a firearm under California law.

24   The claim should be rejected.

25        5.   <u>Motion to Sever Counts 11 and 12</u>

26        Petitioner alleges that the trial court committed prejudicial error when it denied his motion

27   to sever.  This claim was also raised on direct appeal and rejected by the appellate court in the last

28   reasoned decision, as follows:

Appellant argues the trial court abused its discretion in failing to sever counts 11 and 12 from the remaining charges. He contends his subsequent trial was grossly unfair and denied due process. He seeks reversal of his convictions.

**A. Background.**

Prior to trial, appellant orally moved to sever counts 11 and 12 and have a bifurcated trial from the remaining charges. Appellant argued the firearms seized during his arrest were not connected to the robbery, and evidence that he went "around with a gun in his car" was very prejudicial to the robbery charges.

The prosecutor conceded the two firearms in the vehicle's trunk were not used in the robbery, but argued appellant had access to firearms despite his status as a convicted felon, and he had the means to perpetrate the robbery. The prosecutor noted this evidence was "pretty tame" when compared to the allegations that appellant entered a jewelry store and fired two rounds at the owner with customers present.

The court found no prejudice if the charges were heard jointly. The court determined the allegations in the information involved the same individual and the same class of crimes. Based on judicial economy, the trial court denied the motion to sever.

At trial, the jury was instructed pursuant to CALCRIM No. 3515 that each count charged in the case was a separate crime and each count had to be separately considered with its own verdict.

During closing arguments, the prosecutor noted that Cecil's revolver was different than the weapon used in the robbery, and appellant had access to it in the trunk before he was arrested. The prosecutor suggested that appellant's recorded jail conversation with the unknown woman established that appellant left his belongings at Davis's mama's home, including items which the police did not recover, like the weapon used in the robbery and the stolen rings.

**B. Standard of review.**

In an appeal from the denial of severance, we consider the record that existed at the time of the ruling. (*People v. Thomas* (2012) 53 Cal.4th 771, 798 (*Thomas*).) We review the trial court's ruling for an abuse of discretion, which in this context means a ruling that "''''falls outside the bounds of reason.''''" (*People v. Jenkins* (2000) 22 Cal.4th 900, 947 (*Jenkins*).)

The appellant bears the burden of demonstrating that the trial court's ruling was an abuse of discretion, and the appellant "must make a 'clear showing of prejudice.'" (*Thomas, supra*, 53 Cal.4th at p. 798.) Even when a trial court's ruling on a motion to sever was proper at the time it was made, an appellate court must determine also whether the joinder of charges resulted in a grossly unfair trial that deprived the appellant of due process. (*People v. Soper* (2009) 45 Cal.4th 759, 783.)

**C. Analysis.**

Appellant first argues the trial court's pretrial ruling was an abuse of discretion. He then contends that the failure to sever counts 11 and 12 resulted in a grossly unfair trial, resulting in a denial of due process.

**1. The trial court did not abuse its discretion.**

As is relevant here, section 954 permits the joinder of two or more different offenses of the same class of crimes or offenses. (§ 954; see *People v. Soper, supra*, 45 Cal.4th at p. 771.) When confronted with a severance request, the trial court's first inquiry is whether the two offenses are "of the same class of crimes or offenses." (§ 954; see *People v. Soper, supra*, 45 Cal.4th at p. 771.) When this is satisfied, the court has authority to sever charged offenses in the interests of justice upon a showing of good cause. (§ 954.)

The following factors are used to determine if severance is required: "(1) whether the evidence relating to the various charges would be cross-admissible in separate trials, (2) whether some of the charges are unusually likely to inflame the jury against the defendant, (3) whether a weak case has been joined with a strong case or with another weak case, and (4) whether one of the charges is a capital offense or the joinder of the charges converts the matter into a capital case. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 551.) When a weak case was joined with a strong case, the issue is whether a "spillover" effect might affect the outcome. (*People v. Valdez* (2004) 32 Cal.4th 73, 120.)

If cross-admissibility of the evidence is present, that is normally enough to justify the trial court's refusal to sever the charged offenses. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1227.) However, our Supreme Court has held that a lack of cross-admissibility does not establish that the trial court erred. (*Ibid*.; see § 954.1 [evidence concerning one offense need not be admissible as to the other offense in order to be jointly tried].) If there is no cross-admissibility of the evidence, an appellate court evaluates the three remaining factors to determine whether the trial court abused its discretion. (*People v. Trujeque* (2015) 61 Cal.4th 227, 259; *Alcala v. Superior Court, supra*, 43 Cal.4th at p. 1227.)

Appellant concedes that counts 11 and 12 were of the same class of crimes or offenses as the robbery charges. However, he asserts the evidence from these counts would not have been cross-admissible if severance had occurred. He claims the robbery charges against him were relatively weak and the introduction of the evidence relating to counts 11 and 12 were both inflammatory and prejudicial. He relies on *People v. Earle* (2009) 172 Cal.App.4th 372 (*Earle*) to establish an abuse of discretion.

In *Earle, supra*, 172 Cal.App.4th 372, the trial court denied a motion to sever a misdemeanor indecent exposure charge with a felony sexual assault charge. The charges stemmed from entirely dissimilar incidents with no apparent historical connection. (*Id*. at p. 378.) On appeal, the appellate court determined that the exposure charge had a strong potential to inflame the jury against the defendant because the defendant may have been viewed as a "freak" or "'pervert.'" (*Id*. at p. 401.) The indecent exposure case was extremely strong while the evidence in the assault case was weak. (*Id*. at pp. 401–402.) The *Earle* court determined that the joint trials inflicted actual prejudice upon the defendant. (*Id*. at p. 409.) It was considerably likely that the defendant would not have been found guilty of the assault if the jury had not heard evidence of the indecent exposure. (*Ibid*.) As a result, *Earle* reversed the judgment on the counts charging assault. (*Id*. at p. 412.)

Here, appellant devotes considerable briefing regarding how the evidence from counts 11 and 12 would not have been cross-admissible in a bifurcated trial. He also notes that the trial court did not expressly discuss the issue of cross-admissibility as part of its prejudice determination. We need not, however, analyze

appellant's contention that the evidence from counts 11 and 12 was not cross-admissible because a lack of cross-admissibility, by itself, does not establish that the trial court erred. Instead, even when cross-admissibility is lacking, we examine the three remaining factors. (*Alcala v. Superior Court, supra*, 43 Cal.4th at p. 1227.)

Unlike in *Earle*, the evidence against appellant was not weak regarding his participation in the robbery. Prints from appellant's left hand were discovered at the same location where a suspect touched the glass display case during the robbery with his bare left hand. Moreover, the charges in counts 11 and 12 were not unusually likely to inflame the jury against appellant. As the prosecutor noted during the hearing, the evidence associated with counts 11 and 12 was far less troublesome than the allegations associated with the robbery. Earle is factually distinguishable and does not dictate reversal. Finally, none of the combined charges involved a capital offense.

This record does not establish that the trial court's decision fell outside the bounds of reason. (*Jenkins, supra*, 22 Cal.4th at p. 947.) Accordingly, appellant has failed to meet his burden of demonstrating that the trial court's pretrial ruling was an abuse of discretion.

### 2. Appellant was not denied the due process of law.

An appellate court must reverse a judgment if the defendant establishes that the joinder actually resulted in gross unfairness amounting to a denial of due process. (*People v. Mendoza (*2000) 24 Cal.4th 130, 162.) This is true even when the trial court's severance ruling was correct at the time it was made. (*Ibid.*) The appellate court looks at the evidence actually introduced at trial to determine whether the trial was grossly unfair so as to deprive the defendant due process or a fair trial. (*People v. Bean* (1988) 46 Cal.3d 919, 940.)

Appellant notes that the trial evidence was different from the preliminary hearing, where a law enforcement officer testified appellant drove the vehicle on the day of his arrest. In contrast, law enforcement testified at trial that appellant was only a passenger. Without the severance, appellant contends the prosecutor was able to convey an improper impression that appellant was more likely the shooter in the robbery because he associates with criminals who steal firearms, he had easy access to firearms, he may have been involved in the burglary of the Tackett residence, and a connection existed between appellant, McQuiller, and Davis. He argues a real risk existed that the jury decided the robbery case not on its merits but based on the evidence linked to the unrelated firearm counts. He notes Katharina described appellant as "tall and slim" while Rose described one of the three suspects involved in the burglary of her home as "pencil skinny." He maintains that the benefits of a joint trial did not outweigh the possible "spillover" effect of this evidence on the jury. We disagree.

Appellant's prints established that he participated in the robbery. The glass cases had been cleaned before the robbery and the owners did not recognize appellant. Moreover, the jury was instructed that each count charged in the case was a separate crime. It is presumed that the jury understood and followed this instruction. (*People v. Boyette* (2002) 29 Cal.4th 381, 436 [the jury is presumed to follow the court's instructions].) The jury rejected the argument that appellant was in possession of the firearms associated with counts 11 and 12, and the jury did not convict McQuiller of any counts. This record does not demonstrate a reasonable probability that the joinder influenced the jury's guilty verdicts against appellant.

Accordingly, appellant is not entitled to reversal.

_Newsome_, 2016 WL 409787, at *4–6.

     a.  Legal Standard

There is no clearly established Federal law which holds that joinder or consolidation of charges may violate the Constitution. In _United States v. Lane_, 474 U.S. 438, 446 n. 8 (1986), the Supreme Court stated in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." However, in _Young v. Pliler_, the Ninth Circuit stated:

> _Lane_ considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and expressly stated that no constitutional claim had been presented. _See Lane_, 474 U.S. 438, 446 & n. 9, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, _Lane_'s broad statement-found in a footnote without citation to any legal authority-that misjoinder could only rise to the level of a constitutional violation if it was so prejudicial as to violate due process, was probably dictum. Only Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. § 2254; Court dicta and circuit court authority may not provide the basis for granting habeas relief. _Lockyer v. Andrade_, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

_Young_, 273 Fed.Appx. 670, n. 1, 2008 WL 1757564 (9th Cir.2008) (unpublished); _see also_ _Collins v. Runnels_, 603 F.3d 1127, 1132–33 (9th Cir.2010). Moreover, the Supreme Court recently stated that "[j]oint proceedings are not only permissible but are often preferable when the joined defendants' criminal conduct arises out of a single chain of events." _Kansas v. Carr_, 136 S.Ct. 633, 645 (2016).

To determine "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." _Williams_, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." _Id_. Given that there is no clearly established Federal law in this instance, the Court cannot grant relief, since habeas relief is triggered only when the state court adjudication runs afoul of clearly established federal law. _See_ _Moses v. Payne_, 555 F.3d 742, 754 (9th Cir. 2009) (absent a Supreme Court decision that squarely addresses the issue

it "cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent…and so we must defer to the state court's decision").

Even assuming, arguendo, that the Supreme Court's footnote could be considered clearly established Federal law, no constitutional violation occurred in this case, because the prejudice was not so great as to deny Petitioner his right to a fair trial. <u>Lane</u>, 474 U.S. at 446, fn. 8. Petitioner was acquitted of counts eleven and twelve; therefore, the denial of the severance motion did not have a "substantial and injurious effect or influence in determining the jury's verdict" as to those counts. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993). With respect to the other charges, the evidence relating to counts 11 and 12 was no more serious than the evidence relating to counts one through ten. Accordingly, the state court adjudication was not objectively unreasonable. For the foregoing reasons, the claim should be rejected.

6. <u>Instruction on Flight</u>

In his next claim for relief, Petitioner argues that the trial court committed prejudicial error by instructing the jury on flight. The claim was raised on direct appeal. In the last reasoned decision the California Court of Appeals denied the claim as follows:

> Appellant asserts the trial court prejudicially erred by instructing the jury with CALCRIM No. 372, which allowed the jury to infer guilt from his flight from the jewelry store. He seeks reversal of his convictions.
>
> **A. Background.**
>
> Pursuant to CALCRIM No. 200, the trial court instructed the jury that some of the jury instructions may not apply, depending on how the jurors decided the facts of the case. The court stated, "Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."
>
> Pursuant to CALCRIM No. 372, the trial court instructed the jury that if appellant "fled immediately after the crime was committed, that conduct may show that he [was] aware of his guilt. If you conclude that [appellant] fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that [appellant] fled cannot prove guilt by itself."
>
> **B. Standard of review.**
>
> An appellate court uses an independent or de novo standard of review to determine whether jury instructions correctly state the law, or whether they removed an issue from the jury's consideration and effectively directed a finding adverse to the defendant. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) We review a purportedly

erroneous jury instruction by inquiring whether a reasonable likelihood exists the jury applied the challenged instruction in such a way as to violate the Constitution. (*People v. Richardson* (2008) 43 Cal.4th 959, 1028.)

**C. Analysis.**

Appellant argues no evidence established he was one of the three suspects who fled the store, and he was arrested the following day without attempting to evade law enforcement. He contends a flight instruction should not have been given because the prosecution's entire case focused on identifying him as one of the three suspects. He acknowledges that he did not object to the flight instruction in the trial court but claims the error is nevertheless cognizable on appeal because the instruction affected his substantial rights. (§ 1259; *People v. Dennis* (1998) 17 Cal.4th 468, 534 [even in the absence of an objection, section 1259 permits an appellate court to review instructional error that affects substantial rights].) He contends the error was prejudicial under either the federal standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [the reviewing court must state that the error was harmless beyond a reasonable doubt] or the state standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) [whether it is reasonably probable a more favorable result would have occurred in the absence of the error].

Respondent asserts this claim is forfeited on appeal. Respondent also argues this claim is without merit because appellant's identity was established and any instructional error was harmless under the state standard of *Watson, supra,* 46 Cal.2d 818.

We disagree with respondent that appellant has forfeited this issue on appeal. "Challenges to the flight instruction given pursuant to section 1127c are cognizable on appeal even in the absence of a contemporaneous objection." (*People v. Rogers* (2013) 57 Cal.4th 296, 332, fn. 5.) Accordingly, we will address this claim. However, we agree with respondent that appellant cannot establish prejudice.

"In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows: [¶] The flight of a person immediately after the commission of a crime ... is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (§ 1127c; *People v. Rogers, supra,* 57 Cal.4th at p. 332.) Generally, a flight instruction is appropriate when a defendant departs a crime scene under circumstances where the evidence suggests that a consciousness of guilt motivated his or her movements. (*People v. Avila* (2009) 46 Cal.4th 680, 710.)

Appellant relies on *People v. Martinez* (1989) 207 Cal.App.3d 1204 (*Martinez*) and *People v. Parrish* (1986) 185 Cal.App.3d 942 (*Parrish*) as establishing a flight instruction should not have been given under the circumstances of his trial. Respondent, however, contends that the continued validity of these authorities is questionable in light of our Supreme Court's decision in *People v. Mason* (1991) 52 Cal.3d 909 (*Mason*), which rejected the proposition that a flight instruction should never be given where identity is a contested issue. (*Id.* at p. 943.) Appellant asserts that *Mason* kept in place the requirement that there must be independent evidence identifying the defendant as the person who fled.

In *Parrish, supra,* 185 Cal.App.3d 942, this court held that a flight instruction was

not proper where the defendant claimed he was not the perpetrator of a burglary and theft. The only question for the jury to decide was whether the defendant was the perpetrator who fled the crime scene. In reaching its holding, *Parrish* relied upon *People v. Anjell* (1979) 100 Cal.App.3d 189 (*Anjell*), which had noted in dictum that a flight instruction is not warranted where identity is a contested issue and the perpetrators fled the crime scene. (*Anjell, supra*, 100 Cal.App.3d at p. 199.) The *Parrish* court held that the flight instruction added nothing to the jury's determination and could have misled the jury, but it determined no error occurred as the instruction was harmless in light of the evidence against the defendant. (*Parrish, supra*, 185 Cal.App.3d at p. 948.)

Likewise, in *Martinez, supra*, 207 Cal.App.3d 1204, the appellate court held that a flight instruction was not proper where the sole issue at trial was whether the defendant was the driver who caused a hit-and-run accident. The defendant had claimed he was not the driver. *Martinez* held such an instruction added nothing to the jury's determination regarding the identity of the perpetrator, who fled the scene. (*Id*. at p. 1215.) The *Martinez* court cited *Parrish* with approval in finding instructional error. (*Martinez, supra*, at p. 1215.) *Martinez*, however, found no prejudice in light of the evidence, determining a more favorable result was not reasonably probable. (*Id*. at p. 1216.)

Our Supreme Court in *Mason, supra*, 52 Cal.3d 909, subsequently held that a flight instruction is proper even when identity is at issue. (*Id*. at p. 943.) In *Mason*, the defendant was convicted of five murders all committed on separate dates. Approximately four weeks after one of the murders, the defendant led law enforcement on a high-speed automobile chase but eventually escaped on foot. The pursuing deputies saw the defendant's face and found a work order in his abandoned vehicle bearing his first initial and last name, along with his parents' address. (*Id*. at p. 924.) Appellant was arrested the following month. (*Id*. at p. 925.) To show consciousness of guilt, the trial court admitted evidence of the defendant's high-speed flight from law enforcement, and it instructed the jury pursuant to section 1127c. (*Id*. at p. 941.)

On appeal, the defendant claimed, inter alia, that it was error for the court to instruct the jury on his flight because his identity as the murderer was a contested issue following his presentation of alibis for three of the killings. (*Mason, supra*, 52 Cal.3d at pp. 942–943.) The Supreme Court rejected that argument, holding it is proper to instruct a jury on flight pursuant to section 1127c if there is evidence identifying the defendant as the person who fled so long as that evidence was relied upon as tending to show guilt. (*Mason, supra*, at p. 943.) *Mason* stated that a jury is entitled to know that it may infer consciousness of guilt from flight but that flight, by itself, was not sufficient to establish guilt. The jury's need for such an instruction does not change just because the defendant's identity is also an issue. To the contrary, the jury must first logically decide whether the person who fled was the defendant and, if so, how much weight to give the flight in resolving the other issues bearing on guilt. (*Ibid*.) In a footnote, the Supreme Court expressly disapproved *Anjell, supra*, 100 Cal.App.3d 189 "and its progeny" to the extent those cases are inconsistent with the views expressed in its opinion. (*Mason, supra*, 52 Cal.3d at p. 943, fn. 13.) Subsequent to *Mason*, the Supreme Court has reaffirmed the rule that a flight instruction is appropriate even when the defendant's identity is disputed so long as there is substantial evidence of the defendant's flight apart from his identification as the perpetrator. (See *People v. Avila, supra*, 46 Cal.4th at p. 710; *People v. Rogers* (2009) 46 Cal.4th 1136, 1170–1171, fn. 19; *People v. Turner* (1994) 8 Cal.4th 137, 201; *People v. Roberts* (1992) 2 Cal.4th 271, 310; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1245.)

Here, the jury had to decide whether it was appellant who participated in the robbery. The surveillance video shows suspect 1 touching a glass display case with his bare left hand. Appellant's finger and partial palm print, from his left hand, were subsequently identified at that location on the glass case. The owners testified that the glass cases were cleaned the night before this crime. This evidence tended to identify appellant as the person who participated in the robbery and fled. Under a broad reading of *Mason*, this establishes that the flight instruction was not in error. (*Mason, supra*, 52 Cal.3d at p. 943.)

The parties dispute whether *Mason* applies to the facts of this case. We are cognizant that the facts here are distinguishable from those in *Mason*, where the defendant's flight occurred separate and apart from the commission of the crimes. We need not resolve the parties' dispute, however, because even if *Mason* does not control the present situation and instructional error occurred, appellant cannot establish prejudice.

The jury was instructed to first determine the facts of the case and then apply the correct jury instructions to those facts. The jury was also instructed to determine if it was appellant who fled, and, if so, to determine the significance of the flight. The jury was cautioned that evidence of flight cannot prove guilt by itself. The jury is presumed to have followed the court's instructions. (*People v. Boyette, supra*, 29 Cal.4th at p. 436.)

The instruction regarding flight would have been ignored had the jury determined appellant was not involved in the robbery. Moreover, once the jury determined appellant was involved in the robbery, his subsequent flight from the store was of little or no importance in establishing his guilt under the facts of this case. Based on this record, any error in the giving of CALCRIM No. 372 was harmless beyond a reasonable doubt. Accordingly, appellant is not entitled to reversal.

Newsome, 2016 WL 409787, at *12–15.

    a.  Legal Standard

This Court is bound by the state court's determination that CALCRIM No. 372 was properly given as a matter of California law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Thus, this Court has determined: "whether or not the jury instruction on flight correctly stated California law or was applicable under California law to the charges against petitioner is not cognizable in [a] federal habeas petition." Wright v. Hedgpeth, 2012 WL 1194853, *23 (E.D. Cal. 2012). Accordingly, this Court's review is limited to whether the flight instruction violated Petitioner's right to due process.

A permissive inference does not require a jury to draw a conclusion, but "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts." Francis v. Franklin, 471 U.S. 307, 314 (1985). Permissive inference instructions are constitutional unless the conclusions the instruction suggests cannot be justified by reason and common sense in light of

the proven facts before the jury.  Id. at 314-15; Hanna v. Riveland, 87 F.3d 1034, 1037 (9th Cir.1996); United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).  Significantly, there is no "clearly established federal law as determined by the Supreme Court" that prohibits an instruction that would permit an inference of guilt from evidence of flight.  Houston v. Roe, 177 F.3d 901, 910 (9th Cir. 1999).  Therefore, a permissive inference instruction does not affect the application of the "beyond a reasonable doubt" proof standard unless there is no rational way the jury could make the connection permitted by the inference.  United States v. Warren, 25 F.3d 890, 897 n. 4 (9th Cir. 1994).

In this case, regardless of whether the flight instruction was proper, Petitioner fails to demonstrate any prejudice.  As noted by the state court, the jury was instructed to first determine the facts of the case and then apply them to the correct instructions.  The jury was instructed to determine whether Petitioner was involved in the robbery.  If it was determined that Petitioner was one of the suspects, then the jury would have had to determine whether it was Petitioner who fled, and if so, determine the significance of that flight.  However, once it was established that Petitioner was one of the perpetrators, his subsequent flight was of no importance in establishing his guilt.  Accordingly, any error was harmless.  The claim should be denied.

7.  Failure to Instruct on Lesser Included Offense

Petitioner alleges the trial court erred in failing to instruct on brandishing as a lesser included offense of assault with a firearm.  This claim was also raised and rejected on direct review.  In the last reasoned decision, the appellate court denied the claim as follows:

> Appellant argues the trial court committed prejudicial error by failing to instruct the jury on brandishing his weapon as a lesser included offense of assault with a firearm. He contends his rights under the Sixth and Fourteenth Amendments were violated, and counts 4 through 9 must be reversed.
>
> **A. Standard of review.**
>
> "We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense." (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.) In considering whether the trial court had a sua sponte duty to instruct the jury on lesser included offenses, we construe the evidence in the light most favorable to appellant. (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5.)

## B. Analysis.

Appellant contends there was substantial evidence he committed the lesser offense of brandishing a firearm, and not the greater crime of assault with a firearm. Before he fired his weapon at Douglas, which supported the attempted murder conviction, appellant notes he did not attempt to injure any of the alleged assault victims, and he did not expressly threaten to shoot anybody. [FN4.] He concedes he issued a command while holding his weapon, but he did not fire shots when Dodge failed to comply and get down. He maintains there was eyewitness testimony from which the jury could have concluded he was "merely waving the gun" and did not point it at any victims. Although Jonathan testified he felt the gun was pointed at him, appellant asserts the jury could have disbelieved this testimony in light of other (uncited) evidence, or at least rendered a lesser verdict with regards to the other victims.

> [FN4.] Douglas was a named victim of both attempted murder and assault with a firearm.

Like most jurisdictions, California recognizes that an offense may necessarily include one or more lesser offenses. (*People v. Birks* (1998) 19 Cal.4th 108, 117 (*Birks*).) The trial court has a sua sponte obligation to instruct on a lesser included offense when there is substantial evidence from which a reasonable jury could conclude the defendant committed the lesser, but not the greater, offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) A lesser offense is necessarily included in a greater offense if the greater cannot be committed without also committing the lesser. (*People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*); *Birks, supra*, 19 Cal.4th at p. 117.) We consider two issues to determine a trial court's instructional duties regarding a lesser included offense: (1) the statutory elements of the two offenses and then (2) the facts actually alleged in the accusatory pleading. (*Smith, supra*, 57 Cal.4th at pp. 240, 242.)

### 1. The statutory elements of the two offenses.

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) A violation of section 245, subdivision (a)(2), requires "an assault upon the person of another with a firearm...." In contrast, a person is guilty of brandishing a firearm when the person, "except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel ...." (§ 417, subd. (a)(2).)

Starting in 1911, our intermediate courts have consistently rejected appellant's contention that brandishing is a lesser included offense of assault with a firearm. (See *People v. Steele* (2000) 83 Cal.App.4th 212, 218 (*Steele*) [citing nine appellate cases so holding].) The simple explanation is that it is possible to assault someone with a firearm without doing so in a rude, angry or threatening manner such as firing from a place of concealment or from behind the victim. (*Ibid.*) Appellant asks us to ignore this precedent because it potentially contradicts Supreme Court authority in *People v. Wilson* (1967) 66 Cal.2d 749 (*Wilson*) and *People v. Coffey* (1967) 67 Cal.2d 204 (*Coffey*), disapproved on another point in *Curl v. Superior Court* (1990) 51 Cal.3d 1292, 1304, fn. 7. We find this argument unpersuasive.

In *Wilson, supra*, 66 Cal.2d 749, the defendant was found guilty of, inter alia, two

counts of murder and assault with a deadly weapon. (*Id*. at p. 752.) Without expressly holding that brandishing is a lesser included offense to assault with a deadly weapon, the Supreme Court determined the trial court prejudicially erred in failing to instruct the jury on brandishing regarding the murder counts and the count for assault with a deadly weapon. (*Id*. at pp. 757, 764.) According to the *Wilson* court, the failure to provide a brandishing instruction effectively eliminated from the jury's consideration a principal defense presented. (*Id*. at p. 757.) In reaching this conclusion, *Wilson* examined the evidence at trial and how the parties presented closing arguments. (*Id*. at pp. 757–758.)

In the same year that *Wilson* was decided, the Supreme Court in *Coffey, supra*, 67 Cal.2d 204, reviewed a case where the defendant was charged with four counts of assault with intent to commit murder and four counts of assault with a deadly weapon upon a police officer. (*Coffey, supra*, at p. 208.) In a footnote, *Coffey* cited to *Wilson, supra*, 66 Cal.2d at pp. 757–761, and observed that the jury in *Coffey* had been "properly instructed" that brandishing was a lesser offense necessarily included in the assault charges. (*Coffey, supra*, at p. 222, fn. 21.)

In *Steele, supra*, 83 Cal.App.4th 212, the Second Appellate District issued a thoughtful opinion rejecting the same argument appellant raises here. The *Steele* court noted that *Wilson* only implied, and did not directly hold, that brandishing is a lesser included offense to assault with a firearm. (*Steele, supra*, at p. 219.) *Steele* declined to follow *Wilson* 's implied holding for several reasons. First, *Steele* reviewed and cited a discussion appearing in *People v. Escarcega* (1974) 43 Cal.App.3d 391 (*Escarcega*), which determined that *Wilson* did not hold that brandishing is a lesser included offense to assault with a firearm. (*Escarcega, supr*a, at pp. 399–400.)

*Escarcega* noted the following concerns to justify its determination: (1) the rationale of the "'lesser and necessarily included offense'" was never discussed or considered in *Wilson* ; (2) *Wilson* never held that the elements of section 417 were "necessarily included" in the elements for assault with a deadly weapon; (3) *Wilson* did not overrule the prior published appellate court decisions holding that brandishing was not a lesser included offense to assault with a firearm; (4) after *Wilson* was decided, the Supreme Court consistently reaffirmed the rule that a lesser and necessarily included offense is one which must be committed in order to commit the greater offense; and (5) the footnote in *Coffey, supra*, 67 Cal.2d at p. 222, was dictum and without precedential value because it was not responsive to any appellate issues raised and it was not necessary to that decision. (*Escarcega, supra*, 43 Cal.App.3d at pp. 399–400.)

After reviewing and citing *Escarcega* with approval, *Steele* also noted that the Supreme Court in *Wilson* failed to follow its own rule, i.e., "that the determination of whether an offense is lesser included is made from the language of the statute or the information, and not from the evidence adduced at trial. [Citation.]" (*Steele, supra*, 83 Cal.App.4th at p. 221.) Except for *Wilson*, that rule has continued without interruption and was affirmed by the Supreme Court in 1998 in *Birks, supra*, 19 Cal.4th at page 117. Finally, *Steele* noted that an assault with a firearm may be committed without necessarily brandishing a weapon. (*Steele, supra*, 83 Cal.App.4th at p. 221.) Based on the foregoing reasons, *Steele* held that "brandishing cannot be a lesser included offense to assault with a firearm." (*Ibid*.)

Appellant concedes that *Wilson* did not expressly state that brandishing is a lesser included offense to assault with a firearm, but argues such a holding was suggested in *Wilson*. He contends the reference to *Wilson* only months later in *Coffey* makes

that "suggestion" even stronger. He further acknowledges that *Wilson* did not disapprove of those published Court of Appeal cases holding that brandishing is not a lesser included offense to assault with a firearm, but claims *Wilson 's* failure cannot be deemed "as acquiescence" to contrary law from any intermediate appellate courts. Finally, he concedes that the footnote statement in *Coffey* is dictum but argues it should not be ignored, citing authority that Supreme Court dictum is nevertheless persuasive. (See *County of Fresno v. Superior Court* (1978) 82 Cal.App.3d 191, 194 [Supreme Court dicta "may be highly persuasive"]; *Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 272 [appellate courts "generally consider California Supreme Court dicta to be persuasive"].) He insists that we are bound to follow *Wilson* and *Coffey* under the rule that courts of inferior jurisdiction are required to accept the law declared by courts of higher jurisdiction. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We disagree.

It is worth noting that the Supreme Court denied a petition for review in *Steele*, which weakens appellant's contention that *Steele* is inconsistent with *Wilson, supra*, 66 Cal.2d 749 and *Coffey, supra*, 67 Cal.2d 204. Under the statutory elements, it is possible to commit an assault with a firearm pursuant to section 245, subdivision (a)(2), without also committing the crime of brandishing pursuant to section 417. We agree with the appellate courts that brandishing a firearm is not a lesser included offense of assault with a firearm based on their respective statutory elements. (*Steele, supra*, 83 Cal.App.4th at p. 218; *People v. Lipscomb* (1993) 17 Cal.App.4th 564, 569; *People v. Beach* (1983) 147 Cal.App.3d 612, 626; *People v. Orr* (1974) 43 Cal.App.3d 666, 673; *People v. Birch* (1969) 3 Cal.App.3d 167, 176.)

## 2. The facts alleged in the accusatory pleading.

We must also consider the language of the accusatory pleading in determining whether the trial court had a duty to instruct the jury on a lesser offense. (*Smith, supra*, 57 Cal.4th at p. 242.) Here, regarding counts 4 through and including 9, the information alleged that appellant "did willfully and unlawfully commit an assault" on the respective six victims with a firearm. The language of this accusatory pleading did not implicate section 417 as it did not state that appellant drew or exhibited a gun in a rude, angry, or threatening manner, or used his gun in a fight or quarrel. (See § 417, subd. (a)(2).)

Appellant contends there was substantial evidence he committed the lesser offense of brandishing a firearm and not the greater crime of assault with a firearm. However, when determining whether a trial court must instruct on a lesser included offense, we do not examine the evidence developed at trial but look either to the statutory elements or the accusatory pleading. (*Smith, supra*, 57 Cal.4th at pp. 240, 244.) Neither the statutory elements nor the accusatory pleading establish that brandishing was a lesser included offense. Accordingly, the trial court did not err in failing to so instruct. [FN5.]

>        [FN5] Because the trial court did not err, we will not address appellant's alternative contentions that the trial court prejudicially violated his rights under the Sixth and Fourteenth Amendments.

Newsome, 2016 WL 409787, at *9–12.

b.  Legal Standard and Analysis

Generally, issues of state law are not cognizable on federal habeas.  Estelle v. McGuire,

502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").  Although Petitioner attempts to make out a federal claim by claiming a violation of his due process rights, merely placing a "due process" label on a claim does not transform it into a federal one.  Park v. California, 202 F.3d 1146, 1154 (9th Cir.2000).  As correctly noted by Respondent, there is no clearly established federal constitutional right to lesser-included offense instructions in non-capital cases.  United States v. Rivera-Alonzo, 584 F.3d 829, 834 n. 3 (9th Cir. 2009) (citing Solis v. Garcia, 219 F.3d 922, 929 (9th Cir.2000)).  Thus, the claim fails to present a federal question.  See Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir.1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question.").  Additionally, the Court cannot find a constitutional right to a lesser-included offense instruction here as that would require the application of a new rule of law, something the court cannot do under the holding in Teague v. Lane, 489 U.S. 28 (1989).  See Solis, 219 F.3d at 929 (habeas relief for failure to instruct on lesser included offense in non-capital case barred by Teague because it would require the application of a new constitutional rule); Turner v. Marshall, 63 F.3d 807, 819 (9th Cir.1995), *overruled on other grounds by* Tolbert v. Page, 182 F.3d 677 (9th Cir.1999) (en banc) (same).

For the same reasons, Petitioner's claim cannot survive scrutiny under 28 U.S.C. § 2254(d).  Federal habeas relief is barred unless Petitioner can demonstrate that the state court's alleged failure was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Since there is no clearly established Supreme Court authority requiring lesser-included offense instructions in a non-capital case, Petitioner's claim is barred under § 2254(d).  Accordingly, the claim should be denied.

8.  Sentencing Error

In his last claim for relief, Petitioner contends the trial court allowed the prosecution to stack counts 3-9 and a multitude of aggregate firearm enhancements to attain a greater sentence.

33

He asserts that those additional counts should not have been charged. This claim was only presented to the superior court; therefore, it is unexhausted. However, because the claim is not colorable, the Court will recommend it be denied.

As previously stated, it is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings). Here, Petitioner challenges the state court's application of state sentencing laws. Such a claim does not give rise to a federal question cognizable on federal habeas review. Lewis v. Jeffers, 497 U.S. 764 (1990); Sturm v. California Youth Authority, 395 F.2d 446, 448 (9th Cir. 1967) ("a state court's interpretation of its [sentencing] statute does not raise a federal question"). In order to state a claim for relief, Petitioner must demonstrate that the state committed sentencing error, and that the error was "so arbitrary or capricious as to constitute an independent due process" violation. Richmond v. Lewis, 506 U.S. 40 (1992).

Petitioner has failed to demonstrate such a violation here, because on its face, the petition shows no sentencing error or arbitrariness. Petitioner offers no valid argument for his claim that sentencing error occurred. He does not support his claim with any specific facts. His argument is completely conclusory and amounts only to a disagreement with the sentence rendered by the trial court. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). The claim is not colorable and should be denied.

## IV.     RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within

34

twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **February 20, 2018**              **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE